Adam C. Sherman (SBN 224979)
acsherman@vorys.com
T. Blake Finney (*pro hac vice* to be filed)
tbfinney@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio 45202
Telephone:    (513) 723-4000
Facsimile:    (513) 852-8468

Dwight C. Donovan (SBN 114785)
ddonovan@foxrothschild.com
Jack Praetzellis (SBN 267765)
jpraetzellis@foxrothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:    (415) 364-5540
Facsimile:    (415) 391-4436

Attorneys for Plaintiff
Rodan & Fields, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODAN & FIELDS, LLC, a California limited liability company,<br><br>                        Plaintiff,<br><br>        v.<br><br>SHAZAD GILANI; SHAIKH KASHIF ALI; DARLIN GELILANG; and TOP BRANDS INTERNATIONAL INC.,<br><br>                        Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC § 1125(c); CAL. BUS. & PROF. CODE § 17200; AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      This is an action for injunctive relief under the Lanham Act and under California law. Plaintiff Rodan & Fields ("R+F") is a leading provider of skincare products, which sells its products through authorized independent consultants ("Independent Consultants"). To become an Independent Consultant, individuals must agree with the R+F policies, which are incorporated into the consultant agreement that new Independent Consultants are required to sign. These policies

strictly prohibit the online sale of R+F products through third-party websites. Despite these clear prohibitions, Defendants have engaged in a far-ranging online scheme to sell R+F products outside of the authorized distribution channels. Defendants' scheme accounts for a significant percentage of all unauthorized Internet sales of R+F products and has caused irreparable harm to R+F's trademarks, reputation, and to R+F's relationships with its Independent Consultants. Defendants, despite having received several requests to cease their trademark infringement of R+F's trademarks and unauthorized sales, continue to use R+F's trademarks and sell its products without authorization. Accordingly, R+F brings this action for injunctive relief to protect its rights.

## PARTIES

1. Plaintiff R+F is a California limited liability company with its principal place of business in San Francisco, California.

2. Defendant Shazad Gilani ("Gilani") is an individual who, upon information and belief, resides at 1133 Coventry Circle, Glendale Heights, Illinois 60139.

3. Defendant Shaikh Kashif Ali ("Ali") is an individual who, upon information and belief, resides at 1133 Coventry Circle, Glendale Heights, Illinois 60139.

4. Defendant Darlin Gelilang ("Gelilang") is an individual who, upon information and belief, resides at 1133 Coventry Circle, Glendale Heights, Illinois 60139.

5. Defendant Top Brands International Inc. ("Top Brands") is an Illinois corporation with its principal place of business at 1133 Coventry Circle, Glendale Heights, Illinois 60139. Upon information and belief, Top Brands is wholly owned and controlled by one, all, or a combination of Defendants Gilani, Ali, and Gelilang.

6. Upon information and belief, each Defendant is, and at all relevant times mentioned herein was, the agent, servant, and/or employee of one or more of the other Defendants, and in doing the acts herein alleged, acted within the scope and course of such agency and employment. Upon information and belief, at all relevant times there exists a unity of interest and ownership between Top Brands and the individual defendants such that any individuality and separateness of these Defendants ceased to exist and that Top Brands is simply the business conduit and alter ego of Defendants Gilani, Ali, and Gelilang. Adherence to the fiction of the separate existence of Top Brands

1  would sanction fraud and promote injustice.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1338, and 28 U.S.C. Section 1367. R+F's claims arise under federal law and, to the extent they arise under state law, this Court has supplemental jurisdiction.

8. This Court has personal jurisdiction over Defendants because they are engaging in infringing activities against R+F, which they know is located in California. *See, e.g., Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1106 (C.D. Cal. 2007) ("Following Columbia Pictures and Panavision, numerous courts within the Ninth Circuit have found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an out-of-state defendant, alleging that the defendant engaged in infringing activities knowing that plaintiff was located in the forum.").

9. Additionally, this Court has personal jurisdiction over Defendants Ali and Gilani, R+F Independent Consultants, because they expressly consented to jurisdiction in this Court pursuant to Section 18i of the R+F Consultant Policies and Procedures (the "Policies"). A true and correct copy of the Policies is attached hereto as **Exhibit A**. Defendants Ali and Gilani, in signing up as Independent Consultants, executed an Independent Consultant Application incorporating the Policies (the "Consultant Agreement").

10. Further, this Court has personal jurisdiction over all Defendants because they direct business activities toward and conduct business with consumers within the State of California through one or more fully interactive commercial Internet storefronts.

11. Venue is proper in this Court under 28 U.S.C. Section 1391(b) because a substantial part of the events and injury occurred in San Francisco, California, and, in the alternative, under Section 1391(b)(3), as Defendants are subject to personal jurisdiction in this district. Further, Venue is proper in this Court under the forum selection clause in the R+F Policies. (*See* Ex. A § 18i.)

12. The claims in this action are subject to a mandatory JAMS arbitration clause in the Policies. (*See* Ex. A § 18i.) This action seeks only injunctive relief; all claims for money damages based on the conduct below will be sought in a pending JAMS arbitration. To the extent any claims are later determined not to be arbitrable, the parties hereafter waive arbitration, or any parties are

not subject to the arbitration agreement, R+F alternatively seeks money damages. To be clear, the filing of this action is not a waiver of R+F's right to arbitrate all money damage claims involving the conduct alleged herein, and should not be construed to be such a waiver.

## INTRADISTRICT ASSIGNMENT

13. Pursuant to Northern District of California Civil Local Rule 3-2(c), this is an Intellectual Property Action that is to be assigned on a district wide basis.

## FACTUAL ALLEGATIONS

### R+F and Its Trademarks

14. R+F is a leading provider of skincare products in the United States and Canada.

15. R+F devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation. By distributing products exclusively through its Independent Consultants (independent contractors who are authorized and trained to market and sell R+F products), R+F ensures that users of its products receive personal attention and recommendations about which R+F products will be best for them. Further, each genuine R+F product is shipped directly by R+F and handled with the utmost care and precision during the packaging and transport process, so that customers receive fresh, undamaged, and unexpired products. In the highly competitive beauty market, quality is a fundamental part of the consumer's decision to purchase a product.

16. R+F has registered numerous trademarks with the United States Patent and Trademark Office with respect to its brand and products, including, but not limited to, Rodan & Fields® (U.S. Trademark Registration Nos. 2,372,867, and 2,371,069), Rodan + Fields® (U.S. Trademark Registration No. 3,165,883), Rodan + Fields Enhancements® (U.S. Trademark Registration No. 3,841,995), and Rodan + Fields Essentials® (U.S. Trademark Registration No. 3,234,397) (collectively, the "R+F Registered Trademarks").

17. The registration for each of the R+F Registered Trademarks is valid, subsisting and in full force and effect. Further, pursuant to 15 U.S.C. Section 1065, the R+F Registered Trademarks serve as conclusive evidence of R+F's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of R+F's products

identified in the registrations, as provided by 15 U.S.C. Section 1115(b).

18. R+F actively uses and markets all of the R+F Registered Trademarks in commerce.

19. Due to the quality and exclusive distribution of R+F's products, and because R+F is recognized as the source of high quality products, the R+F Registered Trademarks have enormous value.

### R+F Production, Distribution, and Quality Control

20. R+F maintains comprehensive quality controls by, among other things, conducting all sales of its products through authorized Independent Consultants and shipping its products directly to its customers.

21. Each product contains a batch code, which allows R+F to track, among other things, when and where the product was manufactured and packaged. The batch code helps R+F identify and contain any quality problems that may arise with its products. In the event there are quality issues with a particular product, on a certain production date, or at a certain manufacturing facility, the batch code allows R+F to identify other products that may be affected by the quality problem. With this information, R+F is better able to recall those distributed products that may share the defect and to prevent further recurrence of the defect. Because R+F has many topical skincare and similar products, it is critical for R+F to be able to take measures to track and control any defective products to protect customers and its goodwill.

22. R+F maintains control over all shipments to customers, adhering to strict product packaging and handling policies.

23. R+F also provides customers who purchase R+F products through authorized chains of distribution with a 60-day Satisfaction Guarantee ("Satisfaction Guarantee") to ensure that users of R+F's products are completely satisfied.

24. Pursuant to Section 6i of the R+F Policies, Independent Consultants are required to provide all of their customers with two copies of an official R+F sales receipt, and are required to uphold the R+F Satisfaction Guarantee.

25. This Satisfaction Guarantee does not apply to products purchased outside of authorized channels.

26. To maintain the quality and consistency of its products and packaging, as set forth in R+F's Policies R+F strictly prohibits the sale of its products on the Internet other than through R+F's website or the Independent Consultant's official "Pulse Personal Website":

> Consultants may sell the R+F Products through their Pulse Personal Websites (PWS) or through the R+F Website and may also direct Customers to purchase the R+F Products through the R+F Website. Sales of the R+F Products through any other website, including but not limited to Internet auction sites such as eBay or Amazon, or third party bulletin board websites such as Craigslist, are strictly prohibited.

(Ex. A § 11h.)

27. Independent Consultants are also prohibited from purchasing R+F products in bulk unless the Independent Consultants can prove that at least 70 percent of those R+F products were resold to at least three different retail customers within thirty days. (Ex. A. § 5b.)

28. The Consultant Agreement also contains a mandatory arbitration provision that states, in part, that "[a]ny controversy, claim or dispute of whatever nature . . . including but not limited to those arising out of the Consulting Agreement . . . shall be settled through negotiation, mediation or arbitration." (Ex. A § 18i.)

29. The Consulting Agreement further provides that:

> Any Dispute not resolved in writing by negotiation or mediation shall be subject to and shall be settled exclusively by final, binding arbitration before a single arbitrator in San Francisco, California, in accordance with the then-prevailing Comprehensive Arbitration Rules of JAMS.

(Ex. A § 18i.)

### The Sale of R+F Products on the Internet

30. Despite prohibiting unauthorized sales of R+F products online, unscrupulous operators, through a variety of means, continue to sell R+F's products online to the detriment of R+F's Registered Trademarks and reputation. Each of the Defendants is a participant in an orchestrated scheme with the other Defendants to sell R+F products outside of the authorized channels.

31. On September 9, 2015, Defendant Ali enrolled as an Independent Consultant for R+F and executed the Consultant Agreement that incorporated the Policies prohibiting, among other things, the sale of R+F products on the Internet through unapproved third-party websites.

32. Ali represented to R+F that his address was 1133 Coventry Circle, Glendale Heights,

Illinois 60139 ("1133 Address"). A review of the property ownership information publicly available from DuPage County, Illinois shows that the 1133 Address is owned by Defendant Gilani. A true and correct copy of property information relating to the 1133 Address is attached hereto as **Exhibit B**. Exhibit B was retrieved the webpage for the County of Dupage, Illinois.

33. Ali then recruited and sponsored Gilani, who, on or about September 25, 2015, enrolled as an Independent Consultant for R+F and executed the Consultant Agreement, which incorporated the Policies prohibiting, among other things, the sale of R+F products on the Internet through unapproved third-party websites.

34. When he signed up with R+F, Gilani also recorded his home address as the 1133 Address. Gilani further indicated that his billing address was 240 Cortland Avenue, Lombard, Illinois 60148 ("240 Address").

35. Within weeks of Ali and Gilani signing their Consultant Agreements, several apparently distinct unauthorized sellers set up unauthorized storefronts to sell R+F products on eBay, including storefronts named "Celebrita," "genuine-pendant," and "muniya88."

36. R+F purchased products from all three storefronts in an effort to identify the individuals behind them. All three product deliveries had the same return address: P.O. Box 6608, Villa Park, Illinois 60181 ("P.O. Box 6608 Address").

37. Glendale Heights, Lombard, and Villa Park are adjacent neighborhoods in the greater Chicago, Illinois area. For example, the 1133 Address is within four miles of the 240 Address and the Villa Park Post Office—presumably the location of P.O. Box 6608—is also less than four miles from the 240 Address.

38. Multiple e-commerce websites (genuine-pendant.com, whoesalependant.org, celebritaitaly.com, eganowholesale.com, and hcgoods.com) each list the 240 Address as their address. R+F is informed and believes these websites are run and controlled by Defendants.

39. In mid-October and early November 2015, R+F sent cease-and-desist letters to Celebrita, genuine-pendant, and muniya88 explaining that the sale of R+F products on the Internet through their storefront constituted trademark infringement and that selling R+F products on third-party websites by Independent Consultants is strictly prohibited. No response was ever received by

1  R+F and no products were removed.

2  40.  Also in October 2015, through a separate investigation, R+F was able to identify Defendant Gelilang as the individual behind ducklestar1180, yet another unauthorized online seller. Despite receiving cease and desist letters from R+F, Defendant Gelilang continued to sell R+F's products and infringe R+F Registered Trademarks.

41.  At the time, R+F was unaware of Defendant Gelilang's connection to Defendants Ali and Gilani.

42.  R+F continued its investigation of Defendants Ali, Gilani, and Gelilang.

43.  In May 2016, R+F began investigating another unauthorized seller, "Dealsontop," which began offering for sale a large volume of R+F products on www.amazon.com ("Amazon"). As part of its investigation to determine who was behind the Dealsontop Amazon storefront, R+F's investigator purchased R+F products from Dealsontop. Like the products purchased from the Celebrita, genuine-pendant, and muniya88 storefronts, Dealsontop listed the P.O. Box 6608 Address as its return address. The return address further identified a company named "Top Brands" as the selling entity.

44.  Based on this information, R+F discovered the corporation Top Brands International Inc. ("Top Brands") through the Illinois Secretary of State website.

45.  The Illinois Secretary of State website identified the registered agent of Top Brands as Defendant Gilani, and that he resided at the 1133 Address, the same address Gilani listed as his home address when he signed up as an R+F Independent Consultant. Attached hereto as **Exhibit C** is a true and correct copy of an Illinois Secretary of State Corporation File Detail Report for Top Brands.

46.  In summer 2016, Top Brands amended its corporate filings to name Defendant Gelilang as its Secretary and Defendant Ali as its President. Gelilang's listed address as Top Brands' Secretary was, again, the 1133 Address. Attached hereto as **Exhibit D** is a true and correct copy of an Illinois Secretary of State Corporation File Detail Report for Top Brands.

47.  As a result of its investigation, R+F had now discovered and learned that Defendants Ali, Gilani, Gelilang, and Top Brands were each a participant in a coordinated scheme to engage in

-8-                                                          COMPLAINT FOR INJUNCTIVE RELIEF
                                                             CASE NO. _____

the unauthorized sale of products bearing the R+F Registered Trademarks on the Internet, running their operation out of the greater Chicago, Illinois area, and utilizing the corporation Top Brands, the 1133 Address, the 240 Address, and the P.O. Box 6608 Address to conduct their unlawful activity.

### Defendants' Illegal Sale of R+F Products

48. Defendants Ali, Gilani, Gelilang, and Top Brands are engaged in a far-reaching scheme to acquire and sell R+F products unlawfully. Top Brands alone accounts for a significant percentage of the unauthorized R+F products on Amazon.

49. The R+F products sold by Defendants are not genuine R+F products because the products were not authorized for sale by R+F, were not sold with the official R+F receipt, were not sold in consultation with a trained Independent Consultant, did not ship directly from R+F under its strict packaging and handling policies, did not comply with R+F's quality controls, and were ineligible for the Satisfaction Guarantee offered by R+F.

50. R+F is informed and believes that some of the products sold by the Defendants have also been tampered with, repackaged, and/or damaged.

51. As a result, by their unauthorized use of the R+F Registered Trademarks, Defendants have misled consumers into believing they were purchasing products with the same quality controls and customer benefits as R+F products; in reality, however, the products sold by Defendants were materially different from genuine R+F products.

### R+F Initiates Arbitration Proceedings

52. Defendants have continued their unauthorized online sales, despite receiving several requests to cease their unlawful conduct.

53. As a result, on July 20, 2016, R+F initiated a formal dispute against Defendant Gilani, pursuant to the Consultant Agreement's arbitration clause. Attached hereto as **Exhibit E** is a true and correct copy of the Notice of Dispute letter sent to Defendant Gilani.

54. On October 3, 2016, R+F also initiated a formal dispute against Defendant Ali pursuant to the Consultant Agreement's arbitration clause. Attached hereto as **Exhibit F** is a true and correct copy of the Notice of Dispute letter sent to Defendant Ali.

55. Because Defendants Top Brands and Gelilang have a preexisting agency and/or employee/employer relationship and were otherwise intertwined with and/or acting in concert with Defendants Ali and Gilani, under California law, Top Brands and Gelilang are subject to the Consultant Agreement's mandatory arbitration clause.

56. Further, R+F is informed and believes that at all relevant times there existed a unity of interest and ownership between Top Brands and the individual defendants such that any individuality and separateness of these Defendants ceased to exist and that Top Brands is simply the business conduit and alter ego of Defendants Gilani, Ali, and Gelilang. Adherence to the fiction of the separate existence of Top Brands would sanction fraud and promote injustice.

## R+F Has Suffered Significant Harm

57. R+F has suffered, and will continue to suffer, irreparable harm to its quality control procedures, the R+F Registered Trademarks, and its goodwill based upon Defendants' actions.

58. Defendants conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

59. R+F is entitled to injunctive relief because Defendants will continue to unlawfully participate in the sale of R+F products, including the sale of R+F products outside regular distribution channels, thus compromising quality controls, and by selling products with the R+F Registered Trademarks that are materially different than those offered for sale by R+F. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to R+F's goodwill; has induced R+F's Independent Consultants to breach their Consultant Agreements; and has caused and will continue to cause R+F and its Independent Consultants to lose business. R+F is further entitled to injunctive relief to prevent Defendants' further breaches of the Consultant Agreement.

60. Moreover, Defendants' illegal conduct poses a threat to the public because in the event that a defect was discovered in any of R+F's topical skincare products, R+F would be unable to alert any consumers who purchased such products from one or more of Defendants.

## FIRST CAUSE OF ACTION

**(Trademark Infringement – 15 U.S.C. §§ 1114 and 1125(a)(1)(a))**

61. R+F re-alleges the allegations set forth in paragraphs 1-60 above.

62. The R+F Registered Trademarks are valid and subsisting trademarks in full force and effect.

63. Defendants willfully and knowingly used the R+F Registered Trademarks in commerce with the sale of products without the consent of R+F.

64. The use of the R+F Registered Trademarks in connection with the unauthorized sale of products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were the same as the products legitimately bearing the R+F Registered Trademarks, and originated from, or were sponsored, authorized, or otherwise connected with R+F.

65. Defendants' unauthorized use of the R+F Registered Trademarks has infringed and materially damaged the value of the R+F Trademarks.

66. As a proximate result of Defendants' actions, R+F has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits.

67. R+F has no adequate remedy at law for Defendants' infringement. Unless Defendants are permanently enjoined, R+F will suffer irreparable harm.

68. Pursuant to 15 U.S.C. Section 1117(a), R+F is entitled to an award of attorneys' fees.

## SECOND CAUSE OF ACTION

(False Advertising – 15 U.S.C. § 1125(a)(1)(b))

69. R+F re-alleges the allegations set forth in paragraphs 1-68 above.

70. The R+F Registered Trademarks are valid and subsisting trademarks in full force and effect.

71. In their listings on the Internet, including but not limited to eBay and Amazon, Defendants willfully and knowingly used the R+F Registered Trademarks in commerce with the sale and advertising of products without the consent of R+F.

72. The use of the R+F Registered Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale were genuine and authentic products, and originated from, or were sponsored, authorized, or otherwise connected with R+F.

73. Defendants' unauthorized and deceptive use of the R+F Registered Trademarks on the Internet was material and likely to influence customers to purchase the product.

74. As a result, R+F has suffered damages including, but not limited to, loss of sales for products and a loss of goodwill associated with its products.

75. Pursuant to 15 U.S.C. Section 1117(a), R+F is entitled to an award of attorneys' fees.

### THIRD CAUSE OF ACTION

### (Unfair Competition – 15 U.S.C. 1125(a))

76. R+F re-alleges the allegations set forth in paragraphs 1-75 above.

77. The R+F Registered Trademarks are valid and subsisting trademarks in full force and effect.

78. Defendants willfully and knowingly used the R+F Registered Trademarks in commerce with the sale and advertising of products without the consent of R+F.

79. The use of the R+F Registered Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of R+F's products because it suggested that the products offered for sale on by Defendants on the Internet originated from, or were sponsored, authorized, or otherwise connected with R+F.

80. Defendants' unauthorized sale of products bearing R+F Registered Trademarks, and unauthorized use of R+F Registered Trademarks in advertising, materially damaged the value of the R+F Registered Trademarks and caused significant damages to R+F's business relations.

81. Defendants' unauthorized sale of products bearing R+F Registered Trademarks and unauthorized use of R+F Registered Trademarks in advertising infringed on the R+F Registered Trademarks.

82. As a result, R+F has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

83. Pursuant to 15 U.S.C. Section 1117(a), R+F is entitled to an award of attorneys' fees.

///

## FOURTH CAUSE OF ACTION

**(Trademark Dilution – 15 U.S.C. § 1125(c))**

84. R+F re-alleges the allegations set forth in paragraphs 1-83 above.

85. The R+F Registered Trademarks are valid and subsisting trademarks in full force and effect.

86. R+F is the owner of the R+F Registered Trademarks, which are distinctive and widely recognized by the consuming public.

87. R+F is widely recognized by the consuming public as the designated source of goods bearing the R+F Registered Trademarks.

88. Defendants' willful use of the R+F Registered Trademarks in connection with the unauthorized and illegal sale of R+F products diluted the R+F Registered Trademarks because the products sold by Defendants on the Internet were not, in fact, genuine and authentic R+F products.

89. As a result of Defendants' unlawful actions, the reputation and goodwill associated with the R+F Registered Trademarks was harmed and R+F suffered immediate and irreparable injury.

90. Further, R+F has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

91. Pursuant to 15 U.S.C. Section 1117(a), R+F is entitled to an award of attorneys' fees.

## FIFTH CAUSE OF ACTION

**(Common Law Trademark Infringement)**

92. R+F re-alleges the allegations set forth in paragraphs 1-91 above, and incorporates each allegation herein by reference.

93. The R+F Registered Trademarks are valid and subsisting trademarks in full force and effect.

94. R+F is the owner of the R+F Registered Trademarks, which are distinctive and widely recognized marks by the consuming public. R+F products are sold and purchased through its Independent Consultants throughout the United States, including California.

95. R+F is widely recognized as the designated source of goods bearing the R+F

Registered Trademarks.

96. Defendants' knowing and willful use of the R+F Registered Trademarks in connection with the unauthorized and illegal sale of R+F products without R+F's consent infringed on the R+F Registered Trademarks. This infringement includes selling "R+F products" that were materially different from genuine and authentic R+F products because, among other reasons, the products sold on the Internet by Defendants did not have the same quality control procedures as authentic R+F products and consumers did not receive the warranties that R+F offers its customers who purchase R+F products through authorized chains of distribution.

97. The R+F products sold on the Internet by Defendants were not, in fact, genuine and authentic R+F products.

98. Defendants' use of R+F Registered Trademarks is likely to cause confusion, mistake, or deception among consumers, who believe that the products sold by the Internet by the Defendants are identical to and endorsed by R+F when, in fact, they are not.

99. As a result of Defendants' unlawful actions, the reputation of the R+F Registered Trademarks was harmed and R+F suffered immediate and irreparable injury.

100. Further, R+F has suffered damages including, but not limited to, loss of sales, trademark infringement, loss of goodwill associated with its products, and damages to its existing and potential business relations.

### SIXTH CAUSE OF ACTION

**(Unfair Competition [Cal. Bus. & Prof. Code § 17200, *et. seq.*])**

101. R+F re-alleges the allegations set forth in paragraphs 1-100 above, and incorporates each allegation herein by reference.

102. Defendants' obtaining of R+F product through unlawful means and subsequent distribution or sale of R+F products constitutes an unfair and/or fraudulent business practice, as described in California Business and Professions Code Sections 17200, *et seq.* as they are likely to deceive and mislead the public.

103. Defendants' acts of unfair competition have caused and will continue to cause R+F irreparable harm. R+F has no adequate remedy at law to Defendants' unfair competition.

104. R+F is entitled to judgment enjoining and restraining Defendants from engaging in further acts of infringement and unfair competition.

## SEVENTH CAUSE OF ACTION

### (Breach of Contract)

105. R+F re-alleges the allegations set forth in paragraphs 1-104 above, and incorporates each allegation herein by reference.

106. This claim arises under the laws of the State of California.

107. Defendants Ali and Gilani each entered into a contractual relationship with R+F through their Consultant Agreements that specified that the Defendants were prohibited from selling R+F products on or through the Internet, other than through R+F's website.

108. Because Defendants Top Brands and Gelilang have a preexisting agency and/or employee/employer relationship and were otherwise clearly intertwined with and/or acting in concert with Defendants Ali and Gilani, under California law, Top Brands and Gelilang are subject to the Consultant Agreement.

109. R+F fulfilled its obligations under the Consultant Agreement.

110. All conditions required by the Consultant Agreement for Defendants' performance had occurred.

111. Defendants sold products on or through the Internet in violation of the Consultant Agreement.

112. As a direct and proximate result of the material breach of the Consultant Agreement by Defendants, R+F has sustained general, exemplary, and incidental damages in an amount presently unknown, but in excess of the minimal jurisdictional limit of this Court.

## EIGHTH CAUSE OF ACTION

### (Intentional Interference with Business Relations, Contracts, and Prospective Economic Advantage)

113. R+F re-alleges the allegations set forth in paragraphs 1-112 above, and incorporates each allegation herein by reference.

114. R+F has contractual and business relationships with its Independent Consultants,

who sell R+F products. R+F also actively recruits new consultants to promote and sell their products to consumers across the United States.

115. Defendants were aware of R+F's contractual and business relationships with its Independent Consultants by, among other things, having been Independent Consultants themselves and receiving written notification from R+F's counsel.

116. R+F's Policies, which are incorporated into its agreements with its Independent Consultants, prohibit Independent Consultants from, among other things, selling products on the Internet, other than through R+F's website.

117. Defendants interfered with the business relationship between R+F and its Independent Consultants by knowingly providing the means by which Independent Consultants conducted unauthorized sales of R+F products on the Internet.

118. By encouraging the sale of R+F products on the Internet, without authorization, Defendants harmed R+F's prospective business relations as potential consultants are dissuaded from joining R+F and becoming an Independent Consultant due to the availability of R+F products on unauthorized third-party websites.

119. Defendants have no legal right, privilege or justification for their conduct.

120. As a direct and proximate result of Defendants intentional interference with R+F's prospective economic advantage, R+F has suffered, and will continue to suffer, monetary damages and irreparable injury.

## PRAYER FOR RELIEF

WHEREFORE, R+F prays for relief and judgment as follows:

1. Preliminary injunction pending the mandatory JAMS arbitration and a permanent injunction following the outcome of the mandatory JAMS arbitration enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

   a. Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all R+F products,

      b.    Prohibiting the Enjoined Parties from using any of the R+F Registered Trademarks in any manner, including advertising on the Internet,

      c.    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all R+F products as well as any products bearing any of the R+F Registered Trademarks,

      d.    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the R+F Registered Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

      e.    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of R+F's products, or any of the R+F Registered Trademarks,

      f.    Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the R+F Registered Trademarks which associate R+F's products or the R+F Registered Trademarks with the Enjoined Parties or the Enjoined Parties' website,

      g.    Requiring the Enjoined Parties to take all action to remove the R+F Registered Trademarks from the Internet, including from the websites www.ebay.com and www.amazon.com.

    2.    Following the grant of appropriate preliminary injunctive relief, for a stay of this action pursuant to the Federal Arbitration Act and the Court's inherent powers to efficiently manage its docket, pending a mandatory JAMS arbitration under the Consultant Agreement; and

    3.    For an order compelling Defendants Top Brands International, Inc. and Darlin Gelilang to arbitrate pursuant to the Consultant Agreement.

    4.    An award of attorneys' fees, costs, and expenses.

    5.    Such other and further relief as the Court deems just, equitable and proper.

    6.    In the alternative, judgment in favor of R+F and against Defendants in an amount to

be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law.  In addition, permanent injunctions enjoining the Enjoined Parties from the conduct described in Section 1(a)-1(g) above.

DATED: December 19, 2016.

FOX ROTHSCHILD LLP

By _____
DWIGHT C. DONOVAN
Attorney for Plaintiff Rodan & Fields, LLC

## JURY DEMAND

R+F demands a trial by jury on all issues so triable herein.

Dated: December 19, 2016.

FOX ROTHSCHILD LLP

By _____
DWIGHT C. DONOVAN
Attorney for Plaintiff Rodan & Fields, LLC